[No. 11689.   In Bank. — February 15, 1887.]

THE PEOPLE, RESPONDENT, *v.* HIBERNIA SAV-
INGS AND LOAN SOCIETY ET AL., APPELLANTS.

ESCHEATED PROPERTY — PROCEEDING FOR DISCOVERY OF — EXAMINATION
OF BOOKS OF CORPORATION — ATTORNEY-GENERAL. — Section 474 of the
Political Code provides for a proceeding in court for the discovery of
property which has escheated or should escheat to the state, by an ex-
amination as witnesses of persons charged to have such property in their
possession or under their control, and authorizes the court to require
them to render accounts, and to submit their books and papers for in-
spection, under the supervision of the court.   The section does not em-
power the attorney-general to examine the books of corporations, at his
own option, and independent of any judicial action, for the purpose of
discovering such property.

ID. — DEMAND FOR SUBMISSION OF BOOKS. — Prior to the commencement of
such a proceeding, the attorney-general need not demand that the books
and papers of the corporation be submitted to him.

APPEAL from a judgment of the Superior Court of the
city and county of San Francisco, and from an order re-
fusing a new trial.

The proceeding was brought to obtain a judgment re-
quiring the defendants to permit the attorney-general,
and such counsel as he might employ, to examine all the
books and papers of the defendant corporation for the
purpose of discovering what property, if any, it had in
its possession which had escheated or should escheat to
the state.   The further facts are stated in the opinion of
the court.

*Tobin & Tobin,* for Appellants.

*W. T. Baggett, E. C. Marshall, E. P. Cole,* and *James A.
Waymire,* for Respondent.

McKINSTRY, J. — It is not necessary to express any
opinion as to the validity of section 474 of the Political
Code.   Its validity has not been attacked by counsel
herein, nor has the power of the legislature under the

constitution, to confer the jurisdiction upon the Probate or Superior Court, been questioned.

Prior to the amendment of 1880, section 474 of the Political Code read: —

"It shall be the duty of the attorney-general to institute investigation for the discovery of all real and personal property which may have or should escheat to the state, and for that purpose shall have full power and authority to cite any and all persons before any of the Probate Courts of this state, to answer investigations and render accounts concerning said property, real or personal, and to examine all books and papers of any and all corporations.   When any real or personal property shall be discovered, which should escheat to the state, the attorney-general must institute suit in the District Court of the county where said property shall be situated, for the recovery, to escheat the same to the state.   The proceedings in all such actions shall be those provided for in title 8, part 3, Code of Civil Procedure.   The attorney-general may, for the purposes and objects of this section, employ counsel to act in his place and stead for the discovery and recovery of both personal and real property, and in such proceedings, both in investigation for discovery or proceedings for recovery, such counsel so employed shall have the power and authority of the attorney-general.   The compensation for services of such counsel shall be determined by the board of examiners, and paid out of the sums so found to be escheated and recovered to the state, and not otherwise; *provided*, that the state of California shall in no case be responsible for any charges for attorneys' fees for suits prosecuted under this act, but the attorney-general is hereby authorized to pay to the person or persons discovering the same the costs and charges of prosecuting any suit or suits under this act, a sum not in any case exceeding ten per cent of the sums actually received, as provided in this act." ·

The amendment of 1880 simply substitutes the words

"any of the Superior Courts" for "any of the Probate Courts" in one place, and "Superior Courts" for "District Courts" in another.

While the first sentence of the section may not be entirely free from ambiguity, we think the section was clearly intended to provide for a proceeding in court, for the discovery of property which had escheated or should escheat, by an examination as witnesses of persons charged to have such property in their possession or under their control, with authority in the court to require them to render accounts and to submit their books and papers for inspection, under the supervision of the court.

If the purpose of the legislature had been to empower the attorney-general to examine the books of corporations, at his own option, and independent of any judicial action, that purpose could have been accomplished by a slight amendment of section 382 of the Civil Code. And if the strictly grammatical structure of the sentence were alone to be regarded, it would seem to be the persons cited who are "to examine" the books and papers. But the section directs the attorney-general "to institute investigation for the discovery," by "citing" persons "before any of the Probate [Superior] Courts." The succeeding portions of the section make the meaning still more apparent. The attorney-general is authorized to employ "counsel" to act in his place and stead for "the discovery" of property, etc. And the proviso, also, shows the intent that *counselors at law* were to be employed to perform services as such,—as in the examination under oath of the persons cited, — and not services merely clerical, or those of accountant.

As originally passed, the section of the Political Code provided, in effect, that on application of the attorney-general, citation should issue out of the Probate Court. The term "citation" is only employed in the chapters of the Code of Civil Procedure which relate to the settle-

ment of the estates of deceased persons. Citations are required to be directed to the person cited, and must contain the title of the proceedings, a brief statement of the nature of the proceedings, and a direction that the person cited appear at a time and place specified. (Code Civ. Proc., sec. 1707.) They must be served like a summons, and can in certain cases be issued only on the order of the judge. (Secs. 1708, 1709.) Usually citations are issued on petition or written application, and sometimes a party is cited to appear and answer such petition. (Sec. 1384.) On the judge's own motion, or the motion of any person interested supported by affidavits, the citation may require the person cited to appear for "examination." (Sec. 1394.) Or to show cause why further security should not be given. (Secs. 1398, 1403.) Or may require one to appear and *make discovery under oath* as to his possession of any of the assets of the estate of the deceased person. (Sec. 1459.) So a minor may be cited to appear and nominate a guardian. (Sec. 1749.) An executor may be cited to render "an exhibit" showing the amount of money received and paid out by him, etc. (Sec. 1623.) An attachment may be issued after *citation* has been issued and served on the executor to appear and show cause. (Sec. 1628.)

In some instances the person cited may make an issue as to the matters alleged in the petition or written application for the citation; in some he is required merely to subject himself to examination under oath. Section 474 of the Political Code provides for a citation, to issue on the application of the attorney-general, requiring the person cited to answer questions as to property subject to escheat, and to submit accounts, books, and papers, if required by the court.

The section does not in terms require that the application of the attorney-general shall be by petition or complaint in writing. We are inclined to believe that it should be, and that it should state in general terms the

purpose to be investigation for discovery.   But we are clear that the person cited cannot avoid examination by merely *pleading* that he or it has no property subject to escheat.   The very purpose of the proceeding is the discovery of those things knowledge of which would render the proceeding unnecessary.   It cannot therefore have been intended that the state, or attorney-general for the state, should be compelled to allege and prove the facts for the ascertainment of which the proceeding is commenced.   On return of the citation the defendant is to appear, answer fully to all interrogatories, present accounts, if so ordered, and submit books and papers as evidence, if required by the court.

There is some analogy between the statutory proceeding and the former proceeding by bill in equity for discovery when there was no prayer for other relief.   At common law it was in general necessary, in order to maintain a bill for discovery, that an action should be already commenced in another court, to which it should be auxiliary.   There were a few exceptions to this rule, as where the object of the discovery was to ascertain who was the proper party against whom a suit should be brought.   (2 Story's Eq. Jur., 13th ed., sec. 1483.) And so, perhaps, where the bill was filed to secure evidence on which to go to law against a named person. In *Moodaly* v. *Menten,* 2 Dick. 262, plaintiff filed his bill for a discovery, and for a commission to examine witnesses against the East India Company and their secretary, but prayed no relief.   The defendants demurred that plaintiff had not brought an action.   The demurrer was overruled on the ground that the facts alleged showed it could not have been known whether the company and secretary, or a certain lessee of the company, should be sued until discovery was made.   *Mendes* v. *Barnard,* 1 Dick. 65, came before the court on demurrer to so much of the plaintiff's bill as prayed a commission, the bill only praying the commission to enable the plaintiff to

go to law. It was ordered to stand over for presentation of precedents, which being produced, the demurrer was overruled.

Whether section 474 of the Political Code authorizes the summary proceedings for discovery in cases in which a bill of discovery would not have lain at common law, it is not important to inquire, since the power of the legislature to enact the section has not here been questioned. But it is plain the section contemplates no other judgment as the result of the investigation for discovery than an adjudication or declaration that the person cited has (or has not) fully and fairly answered all questions propounded to him; has, if ordered to render any, rendered full, true, and just accounts; and (if so ordered) has submitted all his books and papers without concealment. The court is armed with power to punish for contempt in case of an attempt to defraud and deceive, and with appropriate power to enforce complete discovery. When the discovery is fair and complete, the respondent or person cited is entitled to costs. If the defendant is contumacious, or appears willfully to have sought to conceal the facts, costs should not be allowed him.

We find nothing in the statute which requires the attorney-general to demand that the books and papers of a corporation should be submitted to him before commencing the proceeding. In the case now before us no "citation" was issued. The attorney-general filed a "complaint," in which he alleged that the people had been informed and believed that the defendant had in its possession large sums which "have escheated or should escheat, and which defendants neglect and refuse to turn over to said state," and further alleged that he had made demand to be permitted to examine the books, etc. The defendant, after moving to strike out and demurring, answered, denying that it had in its possession any sum of money which had escheated or should

escheat, or that it had neglected "to turn over" any such; denied that examination of the books was necessary, or that the attorney-general had made demand.

None of the officers of the defendant were examined in court, nor, so far as appears, were they called for examination, nor were they ordered to render any account, or produce any books in court or before any referee, to be examined under the direction of the court.

The court found: —

"That prior to the institution of this action the attorney-general of the state made demand of the defendants the Hibernia Savings and Loan Society (a corporation), and the defendants M. D. Sweeney, R. J. Tobin, C. D. O'Sullivan, G. Touchard, Peter Donahue, D. J. Oliver, and D. T. Murphy, as directors of said corporation, that he, the said attorney-general, or such counsel as he might appoint, be permitted to examine all the books and papers of said corporation, for the purpose of discovering what property in their possession had escheated or should escheat to the state.

"2. That the defendants, each and every of them, refused, and still refuse, to comply with said demand."

And thereupon the Superior Court entered a judgment directing and decreeing "that the plaintiff have judgment against the defendant, and each of them, that the attorney-general of the state, or such counsel as he may select and appoint, be permitted to examine all the books and papers of the defendant the Hibernia Savings and Loan Society, for the purpose of discovering what property is in their possession which has escheated or should escheat to the state of California."

Thus the finding of the court was upon an immaterial issue, and the judgment was one which the court had no authority to render in the proceeding.

Judgment and order reversed.

Temple, J., Thornton, J., Sharpstein, J., McFarland, J., Paterson, J., and Morrison, C. J., concurred.